#32462

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL - 6 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| **MARY KAY INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | Civil Action No. _____ |
| | § | |
| **YAHOO! INC.** | § | 3 - 0 9 C V 1 2 7 8 - M |
| **Defendant.** | § | |
| | § | |

## COMPLAINT

Plaintiff Mary Kay Inc. ("Mary Kay" or "Plaintiff") complains of Defendant Yahoo! Inc. ("Yahoo!") as follows:

### NATURE OF THE ACTION

1.      Mary Kay seeks to put an immediate halt to Yahoo!'s unauthorized and infringing use of Mary Kay trademarks in connection with its web-based "Yahoo! Mail" e-mail ("webmail") systems.  Mary Kay has continuously used its famous and distinctive Mary Kay marks to distinguish its unique direct sales business model, as well as its high-quality skin care and cosmetic products, since it was founded in 1963.  Mary Kay sells its products only to Independent Beauty Consultants who in turn agree to market those products in direct, personal exchanges with the ultimate consumers and not in retail establishments (including internet sales).  In order to maintain its reputation for high-quality products, Mary Kay employs robust quality assurance measures and provides a Satisfaction Guarantee (the "Guarantee") under which it ensures consumers that if they are not completely satisfied, it will replace, exchange or provide a full refund for any Mary Kay product sold by an Independent Beauty Consultant.  Mary Kay's long and continuous use of the Mary Kay marks, as well as its unique direct sales business model,

1

assurance of high-quality products, and the substantial amounts it has invested in advertising and promotion, have enabled it to develop enormous goodwill and consumer recognition in the Mary Kay marks, which marks have long enjoyed a distinctive and famous status among consumers.

2.    Mary Kay and its Independent Beauty Consultants compete with companies who market cosmetic products that were manufactured by others as well as unauthorized resellers of products that Mary Kay originally manufactured (the "unauthorized resellers"). These unauthorized resellers use a variety of means to acquire products originally manufactured by Mary Kay, including fraud and tortious interference with contract, and often sell them using methods, such as retail and internet sales, that Mary Kay has deliberately chosen not to employ. The unauthorized resellers sell products that are not covered by the Guarantee, which only covers products sold by legitimate Mary Kay Independent Beauty Consultants. The activities of these unauthorized resellers create a likelihood of consumer confusion and damage to the goodwill and reputation embodied in the Mary Kay marks.

3.    Mary Kay recently learned that Yahoo! has developed, and is now implementing, a "Yahoo! Shortcuts" feature in its webmail system that allows it, unauthorized resellers, and other competitors to trade upon, and benefit from, the goodwill associated with the Mary Kay marks that Mary Kay itself has spent many years, and invested substantial sums, to develop. Yahoo!, without authorization from Mary Kay, uses the Yahoo! Shortcuts feature to insert "hyperlinks" (also called "webtags") and associated pop-ups which include ads to Mary Kay marks, as well as other marks, when they appear in messages sent to those who receive e-mail on Yahoo! Mail. Below is a

true and accurate screen shot of a Yahoo! Mail e-mail message with Yahoo! Shortcuts

hyperlinks and a pop-up which includes ads based on Mary Kay marks:



     4.     Mary Kay and Mary Kay Independent Beauty Consultants who send Mary

Kay authorized e-mails to Yahoo! Mail users are not asked to consent and do not consent

to insertion of these hyperlinks or the associated pop-ups, and Yahoo! does not, in the e-

mail text, advise Yahoo! Mail users that it, rather than the e-mail sender, has inserted the

hyperlinks. The Yahoo! Shortcuts hyperlinks incorporating Mary Kay marks and

associated pop-ups regularly direct Yahoo! Mail users to internet sites operated by

unauthorized resellers or others selling similar cosmetic products creating a likelihood of

confusion among Yahoo! e-mail users as to source, affiliation, sponsorship or approval of

the pop-ups which include ads and associated websites. Yahoo! even inserts hyperlinks

to competitive sites in the personal e-mails that Mary Kay Independent Beauty

Consultants send to customers or potential customers with Yahoo! Mail accounts without

the knowledge or consent of those Independent Beauty Consultants. The unauthorized

resellers and other competitors whose sites are linked by Yahoo! Shortcuts are thus, through the unlawful use of the Mary Kay marks, in a position to divert sales that Mary Kay and its Independent Beauty Consultants would have made, and these competitors undoubtedly pay Yahoo! for the services it provides. Effectively, Mary Kay e-mails and Independent Beauty Consultant e-mails that advertise May Kay products are hijacked and manipulated by Yahoo! and provide an unfair advantage for the unauthorized re-sellers and other competitors.

5.      Moreover, Yahoo!'s conduct is likely to dilute the distinctiveness of, and to tarnish, the distinctive and famous Mary Kay marks.  The recipients of Yahoo! Mail messages containing hyperlinks and pop-ups which include ads associated with the Mary Kay marks are likely to mistakenly believe that Yahoo!'s activities and the unauthorized resellers are sponsored by, endorsed by, or affiliated with Mary Kay and thus that Mary Kay itself is selling or has authorized the selling of products in retail sales transactions over the internet.  Since its inception, Mary Kay's mission has been to enrich the lives of women by giving them the opportunity to build successful independent retail businesses acting as Independent Beauty Consultants and to provide the ultimate consumers of its products direct, personal sales assistance.  Mary Kay's marks are widely associated with these aspects of its unique business model.  Yahoo!'s conduct is likely to confuse and deceive consumers, as well as actual and potential Independent Beauty Consultants, as to the source, affiliation, sponsorship or approval of Yahoo!'s activities and, among other things, Mary Kay's on-going commitment to utilization of Independent Beauty Consultants who make only direct and personal sales.  In addition, the recipients of Yahoo! Mail with hyperlinks and pop-ups which include ads associated with the Mary

4

Kay marks are likely to associate the lesser quality of goods and/or services offered by unauthorized resellers with Mary Kay. Unauthorized resellers are often selling old and expired products, products that have been altered, or products that have not been stored or handled properly. Mary Kay has no control over and does not guarantee the products sold by unauthorized resellers, and consumer perceptions of the quality of its goods should not be under the control of, or even influenced by, the conduct of such parties.

6.     Yahoo!'s continued aforementioned unlawful conduct has caused and will continue to cause irreparable harm to Mary Kay and the Mary Kay marks and must be immediately halted. Mary Kay thus seeks expedited discovery, swift injunctive relief, and recovery of the damages it has suffered.

## PARTIES

7.     Plaintiff Mary Kay is a Delaware corporation with its principal place of business at 16251 Dallas Parkway, Addison, Texas 75001.

8.     Defendant Yahoo! is a Delaware corporation with its principal place of business at 701 First Avenue, Sunnyvale, California 94089. In addition, on information and belief, Yahoo! advertises, solicits clients, leases office space, provides webmail services, and conducts substantial amounts of business in the State of Texas and within this District.

## JURISDICTION AND VENUE

9.     This action arises in part under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for trademark infringement and dilution. This Court therefore has jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Texas State law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has jurisdiction over Defendant Yahoo! because, on information and belief, Defendant practices the unlawful conduct complained of herein, in part, within this District; because the unlawful conduct complained of herein causes injury, in part, within this District; because Defendant regularly does and solicits business within this District; and because Defendant regularly and systematically directs business activity into and engages in business activity in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

### Mary Kay and the Mary Kay Marks

12.     Mary Kay is a manufacturer and wholesale distributor of cosmetic, skin care, and related products.  Mary Kay products are sold in every state and over thirty-five foreign countries.  Mary Kay was founded in Dallas, Texas, in 1963, and it has become one of the largest direct sellers of skin care products and cosmetics in the United States with over $2.4 billion in annual sales globally and nearly 1.8 million independent consultants worldwide.  Its founder, Mary Kay Ash, has been widely recognized as one of the most influential businesswomen in history.  Mary Kay continues to have its headquarters and primary manufacturing facilities in the Dallas, Texas area.

13.     Mary Kay's success can be attributed, in part, to its high quality products, robust quality assurance procedures, and the carefully designed business model it created for marketing, sale, and distribution of its products.  Through this business model, Mary Kay produces the highest quality products and sells them directly to Independent Beauty Consultants, who then sell the products to their customers, the ultimate consumers.  Mary

Kay provides the Independent Beauty Consultants with product knowledge which they share with their customers to provide the highest level of customer service and to ensure product satisfaction. In turn, the Mary Kay trademark has earned and enjoys a highly distinctive and famous status, a status Mary Kay vigorously protects.

14.     Mary Kay sells its products at wholesale prices to the self-employed Independent Beauty Consultants. The Independent Beauty Consultants then offer the Mary Kay products to their customers at retail prices and make profits from the difference between wholesale and retail prices. There are currently hundreds of thousands of Mary Kay Independent Beauty Consultants in the United States alone.

15.     An individual becomes an Independent Beauty Consultant by entering into an Independent Beauty Consultant Agreement with Mary Kay ("IBC Agreement", attached hereto as Exhibit A). The IBC Agreement governs the use of the Mary Kay name and trademark. Mary Kay expressly retains the exclusive right to use and advertise the Mary Kay name and trademark at its discretion and in a manner consistent with the Mary Kay business model. Independent Beauty Consultants are not permitted to use the Mary Kay name or trademarks in any advertising (including internet advertising) without Mary Kay's prior written permission.

16.     To protect its trademarks, reputation and goodwill, Mary Kay spends substantial time and effort creating unique and targeted approved advertising and marketing materials that utilize the Mary Kay marks in prominent fashion and which are available for use by the Independent Beauty Consultants in their Mary Kay businesses. In addition to print materials, these unique creative works include pre-approved e-cards and other internet and mobile device marketing tools.

17.     Mary Kay also strives to maintain its goodwill and reputation by protecting the quality of its products and associated customer service. Accordingly, Mary Kay products are covered by the Guarantee, which states:

> Mary Kay Inc. stands behind its products sold by our Mary Kay Independent Beauty Consultants. If for any reason you are not completely satisfied with any Mary Kay® product, it will be replaced without charge, exchanged or the full purchase price refunded following its return to your authorized Mary Kay Independent Beauty Consultant or, if she is not longer active, to the Company with proof of purchase.

(*see* Guarantee, attached as Exhibit B). In addition, Independent Beauty Consultants agree, pursuant to the terms of the IBC Agreement, to honor the Guarantee.

18.     Mary Kay only offers the Guarantee on products sold by Independent Beauty Consultants to ultimate consumers. The Guarantee does not cover Mary Kay products purchased from other sources.

19.     Mary Kay does not authorize Independent Beauty Consultants to sell its products in retail sales or service establishments, including on internet websites. In the IBC Agreement, Independent Beauty Consultants agree that they "understand that display or sale of Mary Kay® products in public, retail or service establishments of any kind is inconsistent with the terms of this [IBC] Agreement." (*See* IBC Agreement, attached as Exhibit A.) Accordingly, any Mary Kay product sold by unauthorized retailers over the internet is not covered by the Guarantee.

20.     Independent Beauty Consultants may market Mary Kay products to their customers directly in a number of different ways. This may include face-to-face meetings with, making telephone calls to, and sending e-mails to their customers. All

authorized sales of Mary Kay products involve personal contact or interaction with an Independent Beauty Consultant.

21.    The e-mails sent by Independent Beauty Consultants to customers include information about Mary Kay products they have available for sale. Necessarily, those e-mails use protected Mary Kay marks in their content, including textual references to "Mary Kay" and the names of various Mary Kay products.

22.    As a result of its long and continuous use and vigorous protection of its business model and high quality products, Mary Kay trademarks have earned and maintain a highly distinctive status. Mary Kay develops, manufactures, and markets its products in the United States and worldwide, under its distinctive and famous MARY KAY marks (collectively, the "Mary Kay marks"). Mary Kay owns the Mary Kay marks, and the corresponding United States registrations – Nos. 817516, 1070841, 1545983, 1842599, and 2542184 – among others, for use with its cosmetic products, skin care products, and other related goods and services.

23.    Registrations for the Mary Kay marks are valid and subsisting. Registration numbers 1,070,841, 1,545,983, and 1,842,599 are incontestable in accordance with 15 U.S.C. § 1065 (*see* Certificates of Registration for Mary Kay marks 1,070,841, 1,545,983, and 1,842,599, attached as Exhibit C). Mary Kay also owns registered trademarks for its individual products and certain product lines, including, but not limited to MK Signature, Timewise, and Velocity. (*See* Certificates of Registration for these Mary Kay marks attached as Exhibit D).

24.    Significantly, Mary Kay initially adopted the Mary Kay mark, as early as 1963, and has continuously used the Mary Kay marks in connection with the sale of its

cosmetics and related products and services since such time to the present. As a result of Mary Kay's early adoption and long-established use, the Mary Kay marks are widely recognized and relied upon by the public to identify Mary Kay, Mary Kay products, the personal customer service that accompanies Mary Kay products, and to distinguish Mary Kay products and services from the products or services of others. Moreover, Mary Kay has an extensive media campaign, and Mary Kay uses the Mary Kay marks in various media formats to promote its Mary Kay products.

25.    As a result of the continuous usage and promotion of the Mary Kay marks, Mary Kay has acquired, in addition to the rights established through registration, recognized common law rights in the Mary Kay marks. Mary Kay has also developed valuable and substantial goodwill in the Mary Kay marks.

### Yahoo! and Yahoo!'s Use of the Mary Kay Marks

26.    Yahoo! is one of the world's largest providers of Internet services, including web portal, search engine, directory, news, social media, shopping, and webmail services. The primary conduct at issue in this action relates to Yahoo!'s unauthorized and infringing use of the Mary Kay marks in connection with its webmail services, known as Yahoo! Mail. Upon information and belief, Yahoo! Mail serves over 250 million users, making it one of the most popular and widely used webmail services in the world. Yahoo! Mail allows a user to, among other things, send, receive, and store e-mail messages.

27.    Yahoo! has recently begun to insert hyperlinks (also known as webtags), with associated pop-ups which include ads, into the text of e-mails sent to Yahoo! Mail users through a feature called "Yahoo! Shortcuts." These hyperlinks and pop-ups are

added to the Mary Kay marks and approved e-mails without the knowledge or permission of Mary Kay, or the Independent Beauty Consultant, who may or may not also be a Yahoo! Mail user.  Upon information and belief, these hyperlinks are added to all e-mails sent to Yahoo! Mail users.  These Yahoo! Shortcuts hyperlinks appear as underlined phrases in the e-mail text.  Some of the Yahoo! Shortcut hyperlinks and pop-ups which include ads use and incorporate Mary Kay marks.  Below is a true and accurate screen shot of an actual e-card used by Mary Kay and Independent Beauty Consultants to market Mary Kay products sent to a Yahoo! Mail e-mail address.  Yahoo! Shortcuts hyperlinks incorporating Mary Kay marks are visible as underlined text.



To ensure my e-mails are delivered to your inbox, please click here. Tell me more.

For the extra benefit of a flawless finish, add your choice of a Mary Kay® foundation.

Dear Newemail,

Say hello to the Miracle Set. It's the four-product skin care system clinically shown to deliver results. What other system can say that? In fact, 83 percent of women had a reduction in fine lines and wrinkles after just 12 weeks* of using the Miracle Set. And that's just one of the 11 age-defying benefits you get for just $1 a day†. You not only know the Miracle Set is effective, but like all Mary Kay® products, it's **backed by a 100 percent satisfaction guarantee**. So what do you have to lose — except those annoying worry lines? For more great ideas to achieve Beauty on a Budget, just ask me!

QaTeam Test
qconsultant@marykay.com
(777) 888-9999
Visit my Web site at http://www.marykay.com/qconsultant.

†Based on an average use-up rate of three months at a suggested retail price of $90 USD (excluding foundation).

*Results seen by a dermatologist on panelists in a 12-week clinical study.

This e-mail is being sent to you by me, your Mary Kay Independent Beauty Consultant. If you prefer not to receive future e-mail updates from me, please click here. To view the Mary Kay Privacy Pledge, please visit http://www.marykay.com/privacystatement.aspx. My address is 4006 Belt Line Rd., Addison, TX 75001-4371.

©2009 Mary Kay Inc.

12

28.    When a Yahoo! Mail user "rolls" over one of the hyperlinks, a "pop-up" appears displaying information about the hyperlinked text.    The pop-up contains information, ads, and links to third-party websites.    When a user rolls over the hyperlinks inserted for Mary Kay marks, a pop-up which includes ads appears displaying links to unauthorized resellers as well as sellers of other cosmetic products.    These hyperlinks and pop-ups use Mary Kay marks without authorization from Mary Kay.    Below is a true and accurate screen shot of the same e-card sent to a Yahoo! Mail e-mail address containing a Yahoo! Shortcuts pop-up with ads for the hyperlinked text "Mary Kay."    Links for Mary Kay products being offered by unauthorized third-party retails are visible in the pop-up.



To ensure my e-mails are delivered to your inbox, please click here. Tell me more.

For the extra benefit of a flawless finish, add your choice of a Mary Kay® foundation.

Dear Newemail,

Say hello to the Miracle Set. It's the four-product skin care system clinically shown to deliver results. What other system can say that? In fact, 83 percent of women had a reduction in fine lines and wrinkles after just 12 weeks* of using the Miracle Set. And that's just one of the 11 age-defying benefits you get for just $1 a day†. You not only know the Miracle Set is effective, but like all Mary Kay® products, it's **backed by a 100 percent satisfaction guarantee**. So what do you have to lose — except those annoying worry lines? For more great ideas to achieve Beauty on a Budget, just ask me!

QaTeam Test
qconsultant@marykay.com
(777) 888-9999
Visit my Web site at http://www.mary



†Based on an average use-up rate of three mo...
foundation)

*Results seen by a dermatologist on panelists in ...

This e-mail is being sent to you by me, your Mary Kay Independent Beauty Consultant. If you prefer not to receive future e-mail updates from me, please click here. To view the Mary Kay Privacy Pledge, please visit http://www.marykay.com/privacystatement.aspx . My address is 4006 Belt Line Rd., Addison, TX 75001-4371.

©2009 Mary Kay Inc.

29.    Upon information and belief, Yahoo! charges fees to, and derives revenue from, the unauthorized resellers and other retailers whose websites are linked by the Yahoo! Shortcuts system.  Yahoo! uses the Mary Kay marks in commerce, by among other things, unlawfully inserting Yahoo! Shortcuts hyperlinks and pop-ups which include ads in Mary Kay and Mary Kay authorized marketing e-mails, which incorporate and display the Mary Kay marks, and by using, offering to sell and selling rights to the Mary Kay marks.

### Consumer Confusion and Harm to Plaintiff

30.    A substantial number of the recipients of Mary Kay marketing e-mails sent by Mary Kay and Mary Kay Independent Beauty Consultants are Yahoo! Mail users. When Yahoo! Mail users receive the Mary Kay marketing e-mails through the Yahoo! Mail system, Yahoo! Shortcut hyperlinks and pop-ups are inserted by Yahoo!, including hyperlinks and pop-ups which include ads incorporating Mary Kay marks that direct the user to unauthorized reseller sites. These hyperlinks and their associated pop-ups have been inserted without the authorization or even the knowledge of Mary Kay or the Mary Kay Independent Beauty Consultant sending the e-mails.

31.    On information and belief, many recipients of the Mary Kay marketing e-mails are not aware that the hyperlinks inserted into the e-mail's text were not inserted or authorized by Mary Kay or the Independent Beauty Consultant sending the e-mail. Instead, on information and belief, a substantial number of recipients are likely to mistakenly believe that the hyperlinks and pop-up which include ads associated with the Mary Kay marks were affirmatively included or authorized by either Mary Kay or the

Independent Beauty Consultant sending the e-mail and provide quick links to Mary Kay products being offered for sale by that Independent Beauty Consultant.

32.    On information and belief, a substantial number of recipients of the Mary Kay marketing e-mails who view the information and links to third-party retail websites in the Yahoo! Shortcuts pop-ups which include ads are likely to be confused and follow the links to unauthorized internet resellers in the mistaken belief that the associated website is owned by, sponsored by, approved by or affiliated with Mary Kay.

33.    Upon information and belief, a substantial number of Yahoo! Mail users who are presented with the Yahoo! Shortcuts hyperlinks and pop-ups which include ads that are associated with the Mary Kay marks are likely to be confused as to whether these resellers are owned by, sponsored by, approved by, or affiliated with Mary Kay. Yahoo!'s unauthorized use and misappropriation of the Mary Kay marks in connection with its Yahoo! Shortcut hyperlinks, and the resulting use of those marks in connection with the Yahoo! Shortcut's hyperlinks and pop-ups which include ads, are therefore likely to cause confusion among e-mail recipients as to the source, affiliation, sponsorship or approval of Yahoo!'s activities, hyperlinks, and ads.  This confusion is particularly likely because the hyperlinks and pop-ups which include ads appear in e-mails sent by Mary Kay and Mary Kay Independent Beauty Consultant with no indication that the e-mails were manipulated and revised en route by Yahoo! without the authorization of Mary Kay.

34.    Having been initially confused by Yahoo!'s unauthorized hyperlinks and pop-ups which include ads associated with the Mary Kay marks, even if a Yahoo! Mail user later realizes upon arriving at a third-party retailer site that such third-party website

is not owned by, sponsored by, approved by, or affiliated with Mary Kay, once they reach it, the damage has already been done because a significant number of customers are likely to stay at the third-party retailer's website and purchase from unauthorized resellers or other third-party retailers.

35.     Users are likely to mistakenly associate the quality of products and services offered by the Yahoo! Shortcuts linked unauthorized resellers with those offered by Mary Kay, although, as explained above, Mary Kay does not authorize or guarantee products sold on the internet, even if those products were originally produced by Mary Kay.  Users who become dissatisfied with the goods and services they receive from the third-party retailers that they mistakenly believe to be sponsored by, approved by, or affiliated with Mary Kay, will likely avoid Mary Kay products and services in the future, all to the detriment of Mary Kay and the goodwill associated with the Mary Kay marks.

## CLAIMS FOR RELIEF

### Count 1: Trademark Infringement Under the Lanham Act

36.     Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

37.     The Mary Kay marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

38.     Yahoo!'s use of the Mary Kay marks in connection with the Yahoo! Shortcuts hyperlinks and associated pop-ups which include ads is likely to cause confusion among Yahoo! Mail users as to the source, affiliation, sponsorship, or approval of such hyperlinks, pop-ups, linked retail websites, and Yahoo!'s commercial activities, resulting in direct and contributory infringement of the Mary Kay marks.

17

39.    Yahoo!'s actions constitute, and continue to constitute, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

40.    On information and belief, Yahoo!'s actions have been willful, with full knowledge of Mary Kay's rights in the Mary Kay marks, and with an intent to trade on Mary Kay's goodwill in such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

41.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

### Count 2: Trademark Dilution Under the Lanham Act

42.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

43.    The Mary Kay marks are valid, federally registered trademarks entitled to protection under the Lanham Act.  The Mary Kay marks were distinctive and famous long before Yahoo!'s unauthorized use of the Mary Kay marks began.

44.    Yahoo!'s use of the Mary Kay marks creates a false impression of association between unauthorized resellers and Mary Kay.

45.    The association of these unauthorized resellers with Mary Kay impairs the distinctiveness of and tarnishes the Mary Kay marks.

46.    Yahoo!'s actions constitute, and continue to constitute, trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c).

47.    On information and belief, Yahoo!'s actions have been willful, with full knowledge of Mary Kay's rights, and with an intent to trade on Mary Kay's goodwill in

such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

48.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

### Count 3: Trademark Infringement Under Texas Common Law

49.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

50.    Yahoo!'s use of the Mary Kay marks in connection with the Yahoo! Shortcuts hyperlinks and associated pop-ups which include ads is likely to cause confusion among Yahoo! Mail users as to the source, affiliation, sponsorship, or approval of such hyperlinks, pop-ups, linked retail websites, and Yahoo!'s commercial activities, resulting in direct and contributory infringement of the Mary Kay marks.

51.    Yahoo's conduct constitutes trademark infringement under Texas common law.

52.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

### Count 4: Unfair Competition Under the Lanham Act

53.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

54.    Yahoo!'s use of the Mary Kay marks in connection with the Yahoo! Shortcuts hyperlinks and associated pop-ups which include ads is likely to cause confusion among Yahoo! Mail users as to the source, affiliation, sponsorship, or approval

of such hyperlinks, pop-ups, linked retail websites, and Yahoo!'s commercial activities, resulting in direct and contributory infringement of the Mary Kay marks.

55.    Yahoo! also induces and contributes to the unauthorized and infringing use of the Mary Kay marks by unauthorized resellers and other third-party retail websites, and such websites cause confusion among Yahoo! Mail users as to the source, affiliation, origin, sponsorship or approval of the retail websites. Yahoo!, the unauthorized resellers, and the other third-party retail websites unfairly trade on the fame and goodwill of the Mary Kay marks and are unjustly enriched by such actions.

56.    Yahoo!'s actions constitute, and continue to constitute, unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

57.    On information and belief, Yahoo!'s actions have been willful, with full knowledge of Mary Kay's rights in the Mary Kay marks, and with an intent to trade on Mary Kay's goodwill in such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

58.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

## Count 5: Unfair Competition Under Texas Common Law

59.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

60.    Yahoo's conduct constitutes unfair competition under Texas common law.

61.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

**Count 6: Misappropriation**

62.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

63.    Mary Kay expends extensive time, labor, skill, and money into developing e-mail based marketing materials, including e-cards and marketing e-mail templates and inserts, which it sends directly to customers and potential customers of Independent Beauty Consultants on behalf of Independent Beauty Consultants or provides to Independent Beauty Consultants for inclusion by those Independent Beauty Consultants in e-mails to their customers and potential customers.

64.    Yahoo!'s hijacking and manipulation of Mary Kay's targeted e-mails and the Mary Kay marketing e-mails sent on behalf of its Independent Beauty Consultant through its Yahoo! Shortcuts hyperlinks and pop-ups which include ads, which direct e-mail recipients to unauthorized third-party retail websites selling Mary Kay products or competing products, constitutes unlawful use of the product of Mary Kay's extensive business efforts, thereby providing Yahoo! and the third-party retail websites a special advantage in competition because Yahoo! and the third-party retail websites are not burdened with having to develop and maintain their own marketing materials or lists of customers and potential customers and are therefore reaping where they have not sown.

65.    Yahoo!'s actions constitute, and continue to constitute misappropriation under Texas common law.

66.    As a result, Mary Kay has suffered actual damages and loss and suffered irreparable harm and injury, for which there is no adequate remedy at law, that will continue until Yahoo!'s conduct is enjoined.

## Count 7: Injunctive Relief

67.    Plaintiff hereby alleges and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

68.    Yahoo! has irreparably damaged and injured and continues to irreparably damage and injure Mary Kay by the willful and unlawful acts complained of herein.

69.    Unless Yahoo! is restrained by this court, it will continue to cause irreparable damage and injury to Mary Kay for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendant as follows:

A.    Preliminarily and permanently enjoin Defendant, their officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with the Defendant, from competing unfairly with Mary Kay, using the Mary Kay marks in any manner whatsoever that is likely to cause confusion or dilution, including:

        i.    inserting or including any hyperlinks, webtags, advertisements, text, or other materials using or incorporating any Mary Kay Mark into or in connection with webmail messages received by users of its webmail systems;

        ii.    committing any other acts or making any other representations, express or implied, that would infringe any of Mary Kay's trademark rights, or that would likely confuse, mislead, or deceive consumers as to Defendant's approval by, or affiliation with Mary Kay;

22

      iii.  inducing, assisting, contributing, or abetting any other person or business entity from engaging in or performing any of the activities referred to in the subparagraphs above.

B.     Order an accounting of profits derived from Defendant's wrongful actions complained of herein;

C.     Award Plaintiff profits derived by Defendant through its wrongful actions complained of herein;

D.     Award Plaintiff damages caused by Defendant's wrongful actions complained of herein;

E.     Declare that this case is exceptional pursuant to 15 U.S.C. § 1117(a);

F.     Award Plaintiff its costs in bringing this action;

G.     Award Plaintiff its reasonable attorneys' fees; and

H.     Award Plaintiff any such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

VINSON & ELKINS, LLP

_Allen W. Yee_

Veronica S. Lewis
  Texas Bar No. 24000092
Allen W. Yee
  Texas Bar No. 24042201
2001 Ross Ave. - Suite 3700
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.220.7716

**_ATTORNEYS FOR PLAINTIFF_**
**_MARY KAY INC._**

Dallas 1570547v6

23



**Exhibit A**

## Independent Beauty Consultant Agreement
## General Terms and Conditions

**A. THE INDEPENDENT BEAUTY CONSULTANT AGREES:**

1. To promote and sell Mary Kay® products to ultimate consumers and not to sell or display those products in retail sales or service establishments.

2. To provide each consumer with the written Mary Kay Satisfaction Guarantee and to promptly honor it upon request. I understand that Mary Kay Inc. ("Company") sponsors a complete satisfaction or money-back guarantee as to each Mary Kay® product sold by me to a consumer.

3. To maintain the highest standards of integrity, honesty and responsibility in dealings with the Company, consumers and other Beauty Consultants. To present Mary Kay® products in a truthful and sincere manner and hold the Company harmless from damages resulting from misrepresentations by me.

4. To protect the Mary Kay® trademarks and trade name by obtaining the Company's written permission prior to my use in any advertising (including but not limited to the Internet) or literature other than Company-published material. I understand that display or sale of Mary Kay® products in public, retail or service establishments of any kind is inconsistent with the terms of this Agreement.

5. As an independent contractor, to assume sole liability for all self-employment (Social Security), income taxes, and other reports required by my activities as an Independent Beauty Consultant and to abide by all federal, state and local laws governing my Mary Kay business.

6. To purchase the Starter Kit and all Mary Kay® products only from Company. All orders submitted to Company shall be accompanied by cash, credit card charge, cashier's or certified check, or money order made payable to the order of "Mary Kay Inc." for the full amount due. I understand that all orders are subject to acceptance by Company and the terms of this Agreement.

7. Only credit card charges for Mary Kay® products will be submitted to Company for processing through the Company's Retail Credit Card Reimbursement Service.

8. I am not a joint venturer with, or franchisee, partner, agent or employee of Company. I have no power or authority to incur any debt, obligation or liability on behalf of Company. I understand that all Independent Beauty Consultants, Independent Sales Directors and Independent National Sales Directors are independent contractors and are subject to this provision.

9. When presenting Mary Kay business opportunities, to do so in a truthful and sincere manner and ensure that any prospective Beauty Consultant recruited by me is the age of 18 years or older and receives education and materials related to a Mary Kay business upon submission of an Independent Beauty Consultant Agreement.

10. Company reserves the right to assure continued service to my customers through other active Beauty Consultants if I cease to be an active Beauty Consultant.

11. Company may release my name and telephone number in response to a customer's request for a Beauty Consultant in my area. If this information is not to be released, I agree to notify Company that I do not want this information released by written notice directed to: Consultant Records Department, P.O. Box 799040, Dallas, TX 75379-9040.

12. To comply with any changes to the General Terms and Conditions of the Independent Beauty Consultant Agreement that may be made by the Company.

**B. MARY KAY INC. ("COMPANY") AGREES:**

1. To allow a discount from suggested retail prices on Section 1 items of the then current Consultant order form ("Section 1 products"). This discount shall not apply to samplers, premiums, demonstrators, literature, hostess gifts or sales promotion items.

2. To pay Beauty Consultant with one or more active team members a monthly personal team commission on all purchases of Company products (excluding Starter Kits and sales aids) made by persons whom Beauty Consultant has personally recruited to become Mary Kay Beauty Consultants and who have been accepted by the Company, with commissions to be calculated and paid in accordance with the then current Company-published monthly personal team commission schedule for so long as both Beauty Consultant and team member are active, provided that commissions and bonuses paid on merchandise not sold at retail to ultimate consumers which is subsequently returned for Company repurchase pursuant to this Agreement, may be charged back or deducted from commissions or other sums payable by Company to Beauty Consultant. Consultant must be active and have one or more active team members in order to receive a monthly personal team commission. An Independent Beauty Consultant is considered "active" in the month a minimum $200 wholesale Section 1 product order is received by Company and in the following two calendar months.

3. Company may change suggested retail prices, discounts, commissions, transportation charges, contest rules and active status requirements at any time. Company will give Beauty Consultant at least ten (10) days' prior written notice of: a) any changes to contest rules and active status requirements; b) increases in suggested retail prices and transportation charges; and c) decreases in standard discount and commission schedules. Written notice may be given by posting notice on the Company Web site(s).

4. No geographical territories or limits concerning sales or recruiting within the United States, Puerto Rico, the U.S. Virgin Islands and Guam are imposed on Beauty Consultant.

5. Company reserves no right of control or direction of Beauty Consultant's activities, other than the right to question results.

6. To accept Consultant's cancellation of this Agreement within thirty (30) days after acceptance of the Agreement by Company, and upon return of Consultant's original and unused Starter Kit to Company, to refund to Consultant the Consultant's cost of the Starter Kit; or if Agreement is terminated and Consultant's original and unused Starter Kit is returned to Company after the cancellation period and within one (1) year of purchase, to repurchase such Starter Kit at ninety percent (90%) of Consultant's original net cost.

7. To repurchase, upon termination of this Agreement, at ninety percent (90%) of Consultant's original net cost, original and unused Section 1 products, provided such items were purchased by Consultant from Company within one (1) year prior to return.

8. Starter Kit and Section 1 products must be shipped freight prepaid, accompanied by a "Request for Repurchase" form to the Mary Kay Repurchase Department in Dallas. Consultant agrees that Company's cost of any prizes or product bonuses awarded to Consultant because of the original purchase and any indebtedness Consultant owes Company will be deducted from the repurchase amount. Consultants who return merchandise to Company are not eligible to rejoin Mary Kay as a Mary Kay Beauty Consultant. Consultant agrees that Section 2 items are not intended to be purchased from Company for resale and are subject to the repurchase provisions.

9. Customer names and addresses furnished by Beauty Consultant to Company in connection with optional programs shall remain the sole property of Beauty Consultant and will not be used by Company or disclosed by Company to other parties without Beauty Consultant's permission, except as may be required by law.

10. There will be no direct sales from Company to the Beauty Consultant's customer without a commission being paid to customer's Beauty Consultant, provided Beauty Consultant is a member of the Mary Kay independent sales organization at the time of the sale. Company will not accept an order directly from customer without the name and Beauty Consultant number of customer's Beauty Consultant. Commissions will be charged back on customer returns.

**This Agreement is subject to acceptance by Company at its corporate headquarters in Dallas, Texas, through issuance of a Notice of Acceptance. Such acceptance is conditioned upon receipt of a Starter Kit by Beauty Consultant. This Agreement shall be governed by the laws of the State of Texas as to all matters. The parties further agree that if any dispute or controversy arises between them concerning any matter relating to this Agreement that any (suits which either party may elect to submit for legal jurisdiction shall be submitted to the jurisdiction of the courts of the State of Texas and the parties agree that the proper venue shall be Dallas, Dallas County, Texas.**

**This Agreement is not subject to alteration, modification or change, except in writing, signed by an authorized executive of the Company and shall not be deemed to be changed, modified or altered by reason of any advice, suggestions, guides or sales aids furnished by the Company to the Beauty Consultant. This Agreement shall be effective from the date of acceptance until December 31 of the same year and shall thereafter be automatically renewed each January 1, for additional terms of one year each, provided that the Agreement may be terminated by either party thereto immediately for any breach of the provisions or by either party at any time during the initial term or any renewal term by not less than thirty (30) days written notice.**

It is not necessary to submit a new Agreement (or purchase a new Starter Kit) if reinstating within one year of last order month (anniversary month, if no last order) as the terms and conditions of the then current Independent Beauty Consultant Agreement will continue in full force and effect. For record purposes, a Consultant must have a minimum $200 wholesale Section 1 product order to update her last order date.

This is the sole and only Agreement between the parties relating to the subject matter hereof, and both parties acknowledge that the Independent Beauty Consultant is not an employee of Company and will not be treated as an employee with respect to this Agreement for federal, state or local tax purposes, or otherwise.

©2000, 2001, 2002, 2003, 2004 Mary Kay Inc.                    Printed in U.S.A.                    10-105000   C/04



**Exhibit B**

# Satisfaction Guarantee

Mary Kay Inc. stands behind its products sold by our Mary Kay Independent Beauty Consultants. If for any reason you are not completely satisfied with any Mary Kay® product, it will be replaced without charge, exchanged or the full purchase price refunded following its return to your authorized Mary Kay Independent Beauty Consultant or, if she is no longer active, to the Company with proof of purchase.

*In contrast to laws applying to purchases over $25 which only give you a limited time period within which to cancel your order and return unused products (which you may, of course, do by utilizing the Notice of Cancellation form furnished you in accordance with governmental regulations), the Mary Kay Guarantee assures that you, as a consumer, have protection of your purchase price, without limit as to amount of purchase or time for return and whether or not returned products have been partially used.*

Please contact the Customer Satisfaction Department for instructions on how to obtain an exchange or refund.

> Mary Kay Inc.
> 1-800-MARY KAY
> (1-800-627-9529)

This form is made available by Mary Kay Inc. to authorized Mary Kay Independent Beauty Consultants selling Mary Kay® products.



**Exhibit C**

Int. Cl.: 3

Prior U.S. Cl.: 51, 52

## United States Patent Office

Reg. No. 1,070,841
Registered Aug. 9, 1977

## TRADEMARK
### Principal Register

## MARY KAY

Mary Kay Cosmetics, Inc. (Texas corporation)
8900 Carpenter Freeway
Dallas, Tex. 75247

For: HAIR CARE PRODUCTS, SPECIFICALLY HAIR SHAMPOOS, HAIR CONDITIONERS, HAIR SPRAYS, AND SETS THEREOF, in CLASS 3 (U.S. CLS. 51 and 52).

First use at least as early as Apr. 4, 1976; in commerce at least as early as May 3, 1976.

"Mary Kay" is the first two names of Mary Kay Ash, the founder and chairman of the board of Mary Kay Cosmetics, Inc., whose consent is of record.

Owner of Reg. Nos. 817,516, 817,933, and 1,022,401.

Ser. No. 88,946, filed June 1, 1976.

E. P. HARAB, Examiner

Int. Cl.: 3

Prior U.S. Cls.: 51 and 52

**United States Patent and Trademark Office**

Reg. No. 1,545,983
Registered July 4, 1989

## TRADEMARK
### PRINCIPAL REGISTER

# MARY KAY

MARY KAY COSMETICS, INC. (TEXAS COR-
    PORATION)
8787 STEMMONS FREEWAY
DALLAS, TX 75247

FOR: COSMETICS, SPECIFICALLY CLEANS-
ING CREAM, FRESHENER, MOISTURIZER,
HAND CREAM. CLEANSING GEL, COLOGNE,
EYE CREAM CONCENTRATE, WATERPROOF
MASCARA, FOUNDATION, TRANSLUCENT
POWDER, HAIR SHAMPOO, NIGHT CREAM,
MOISTURE RICH MASK, BODY LOTION, SUN-
SCREEN LOTION, PURIFYING BAR, LIP
GLOSS, EYE SHADOW, CREAM BLUSH, ANTI-
AGING COMPLEX, AND PROTEIN CONDI-
TIONER, IN CLASS 3 (U.S. CLS. 51 AND 52).
FIRST USE 5-25-1988; IN COMMERCE
5-25-1988.
OWNER OF U.S. REG. NOS. 817,516, 1,312,253
AND OTHERS.
THE NAME "MARY KAY" IN THE MARK IS
THE FIRST AND SECOND NAMES OF "MARY
KAY ASH", A LIVING INDIVIDUAL WHOSE
CONSENT IS OF RECORD.

SER. NO. 741,595, FILED 7-22-1988.

MICHAEL MURPHY, EXAMINING ATTORNEY

Int. Cls.: 3, 8, 9, 16 and 21

Prior U.S. Cls.: 2, 21, 23, 29, 36, 37, 38, 51 and 52

## United States Patent and Trademark Office

Reg. No. 1,842,599
Registered July 5, 1994

### TRADEMARK
#### PRINCIPAL REGISTER

## MARY KAY

MARY KAY COSMETICS, INC. (DELAWARE CORPORATION)
8787 STEMMONS FREEWAY
DALLAS, TX 75247

FOR: BODY CARE PRODUCTS; NAMELY, BUFFING CREAMS, CLEANSING GELS, BODY LOTIONS, DUSTING POWDER; HAIR CARE PRODUCTS; NAMELY, SHAMPOOS, CONDITIONERS, STYLING GELS, FINISHING SPRAYS AND STYLING MOUSSE; SKIN CARE PRODUCTS; NAMELY, CLEANSING CREAMS, CLEANSING BARS, FACIAL SOAPS, FACIAL MOISTURE AND REVITALIZING MASKS, TONERS, SHAVE CREAMS, MOISTURIZERS, OIL CONTROL LOTIONS, OIL ABSORBERS, HAND CREAMS, CREAM AND LIQUID FOUNDATIONS, SKIN CREAMS; GLAMOUR AND BEAUTY PRODUCTS; NAMELY, EYE COLORS, EYE DEFINING PENCILS, EYEBROW PENCILS, MASCARA, LIPSTICKS, LIP GLOSS, LIP LINER PENCILS, CHEEK COLORS, ROUGE, LOOSE POWDER, PRESSED POWDER, FACIAL HIGHLIGHTER, BLEMISH CONCEALERS, NAIL CARE PREPARATIONS, NAIL COLORS; SUNSCREEN AND SUNBLOCK PREPARATIONS, TANNING LOTIONS AND NON-MEDICATED LIP PROTECTOR PREPARATIONS; AND FRAGRANCE PRODUCTS; NAMELY, COLOGNES AND COLOGNE SPRAYS, AND EMERY BOARDS, IN CLASS 3 (U.S. CLS. 51 AND 52).

FIRST USE 0–0–1963; IN COMMERCE 0–0–1963.

FOR: MANICURE IMPLEMENTS; NAMELY, NAIL BUFFERS, CUTICLE PUSHERS, IN CLASS 8 (U.S. CL. 23).

FIRST USE 0–0–1990; IN COMMERCE 0–0–1990.

FOR: AUDIOVISUAL SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS; NAMELY, AUDIOCASSETTE AND VIDEOCASSETTE TAPES FEATURING SALES TIPS, ADVICE AND TRAINING AND MOTIVATIONAL TOPICS, IN CLASS 9 (U.S. CLS. 21 AND 36).

FIRST USE 0–0–1990; IN COMMERCE 0–0–1990.

FOR: PRINTED BUSINESS SUPPLIES AND SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS; NAMELY, BUSINESS ORGANIZER FOLDERS, LABELS, DECALS, GLAMOUR SHADE GUIDES, SALES FLIP CHARTS, PROMOTIONAL DECALS, PLANNING SHEETS, INSTRUCTIONAL BROCHURES, AND MAGAZINES AND PAMPHLETS CONTAINING COSMETIC, SKIN CARE, BEAUTY AND RELATED TOPICS; DISPOSABLE PAPER FACIAL CLOTHS; PLASTIC AND PAPER COSMETIC BAGS SOLD EMPTY, IN CLASS 16 (U.S. CLS. 37 AND 38).

FIRST USE 0–0–1980; IN COMMERCE 0–0–1980.

FOR: COSMETIC TRAYS AND CADDYS, LIPSTICK HOLDERS, EYELINER BRUSHES, RETRACTABLE EYE AND LIP BRUSHES, COSMETIC BRUSHES AND COSMETIC

2                                    1,842,599

SPONGE TIP APPLICATORS, IN CLASS 21
(U.S. CLS. 2 AND 29).

OWNER OF U.S. REG. NOS. 817,516, 1,628,275
AND OTHERS.

SER. NO. 74–302,038, FILED 8–7–1992.

FIRST    USE    0–0–1990;    IN    COMMERCE
0–0–1990.

GERALD C. SEEGARS, EXAMINING ATTOR-
NEY



**Exhibit D**

Int. Cls.: 16, 18 and 21

Prior U.S. Cls.: 1, 2, 3, 5, 13, 22, 23, 29, 30, 33, 37, 38, 40, 41 and 50

**United States Patent and Trademark Office**

Reg. No. 2,929,973
Registered Mar. 8, 2005

## TRADEMARK
### PRINCIPAL REGISTER

## MK SIGNATURE

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P. O. BOX 799045
DALLAS, TX 753799045

FOR: PAPER, CARDBOARD, AND GOODS MADE FROM THESE MATERIALS INCLUDED IN THIS CLASS, NAMELY, PRINTED MATTER, NAMELY, STATIONERY, NOTE CARDS, ENVELOPES, REMINDER POSTCARDS, NOTE PAPER, ORDER FORMS, LETTERHEADS AND BUSINESS CARDS; NEWSPAPERS FEATURING ARTICLES OF INTEREST TO WOMEN AND CONTAINING ADVICE REGARDING THE RECRUITING AND TRAINING OF OTHERS IN DIRECT SALES OF COSMETICS AND TOILETRY PRODUCTS; MAGAZINES AND PAMPHLETS CONTAINING TOPICS OF BEAUTY CARE AND FASHION PERIODICALLY DISTRIBUTED TO INDEPENDENT BUSINESS PERSONS ENGAGED IN THE SALE OF COSMETICS, TOILETRIES, AND RELATED PRODUCTS FOR THEIR USE AND DISTRIBUTION TO THEIR CUSTOMERS; PENS AND PENCILS FOR WRITING, PAPER IDENTIFICATION CARDS, PAPER LABELS, DECALS, DATE BOOKS; INSTRUCTIONAL BROCHURES COVERING SKIN CARE, MAKEUP, HAIR CARE, AND NAIL CARE TIPS AND PROPER APPLICATION AND USE OF SKIN CARE, MAKEUP, HAIR CARE AND NAIL CARE PRODUCTS; DISPO-

SABLE FACIAL TISSUES, PLASTIC AND PAPER BAGS FOR PACKAGING, EYE PENCIL SHARPENERS AND LIP PENCIL SHARPENERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 11-0-2001; IN COMMERCE 11-0-2001.

FOR: LEATHER AND IMITATIONS OF LEATHER AND GOODS MADE OF THESE MATERIALS INCLUDED IN THIS CLASS, NAMELY, TOTE BAGS, TRAVEL BAGS, AND UMBRELLAS, LIPSTICK VANITY HOLDERS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 11-0-2001; IN COMMERCE 11-0-2001.

FOR: COSMETIC VANITY TRAYS, EMPTY COSMETIC COMPACTS, AND COSMETIC BRUSHES, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 11-0-2001; IN COMMERCE 11-0-2001.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SIGNATURE", APART FROM THE MARK AS SHOWN.

SER. NO. 76-387,257, FILED 3-26-2002.

INGA ERVIN, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51, and 52

Reg. No. 3,174,408

**United States Patent and Trademark Office**    Registered Nov. 21, 2006

## TRADEMARK
### PRINCIPAL REGISTER



MK Signature

MARY KAY INC. (DELAWARE CORPORATION)
P.O. BOX 799045
DALLAS, TX 753799045

FOR: CREAM, LIQUID MAKEUP FOUNDA-
TIONS, CREAM MAKEUP FOUNDATIONS, FA-
CIAL HIGHLIGHTERS, BLEMISH CONCEALERS,
MASCARAS, EYELINERS, EYE PENCILS, EYE SHA-
DOWS, EYEBROW PENCILS, BLUSHERS, ROUGES,
POWDER CHEEK COLORS, LOOSE AND PRESSED
FACE POWDERS, LIPSTICKS, LIP GLOSSES, LIP
LINER PENCILS, LIP COLOR CRAYONS, NAIL

CARE PREPARATIONS, NAIL COLORS, NAIL TOP
AND BASE COATS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50,
51 AND 52).

FIRST USE 11-1-2001; IN COMMERCE 11-1-2001.

OWNER OF U.S. REG. NOS. 1,148,597 AND
2,186,493.

SN 76-259,699, FILED 5-21-2001.

SETH A. RAPPAPORT, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51, and 52

Reg. No. 3,174,407

## United States Patent and Trademark Office

Registered Nov. 21, 2006

### TRADEMARK
PRINCIPAL REGISTER

## MK SIGNATURE

MARY KAY INC. (DELAWARE CORPORATION)
P. O. BOX 799045
DALLAS, TX 753799045

FOR: CREAM, LIQUID MAKEUP FOUNDA-
TIONS, CREAM MAKEUP FOUNDATIONS, FA-
CIAL HIGHLIGHTERS, BLEMISH CONCEALERS,
MASCARAS, EYELINERS, EYE PENCILS, EYE SHA-
DOWS, EYEBROW PENCILS, BLUSHERS, ROUGES,
POWDER CHEEK COLORS, LOOSE AND PRESSED
FACE POWDERS, LIPSTICKS, LIP GLOSSES, LIP
LINER PENCILS, LIP COLOR CRAYONS, NAIL
CARE PREPARATIONS, NAIL COLORS, NAIL TOP
AND BASE COATS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50,
51 AND 52).

FIRST USE 11-1-2001; IN COMMERCE 11-1-2001.

OWNER OF U.S. REG. NOS. 1,148,597, 2,384,691,
AND OTHERS.

SN 76-259,698, FILED 5-21-2001.

SETH A. RAPPAPORT, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51, and 52

Reg. No. 2,414,631

## United States Patent and Trademark Office

Registered Dec. 19, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## TIMEWISE

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P. O. BOX 799045
DALLAS, TX 753799045

FOR: SKIN CARE PRODUCTS, NAMELY SKIN CREAMS, LOTIONS, CONDITIONERS, SERUMS, OILS, OIL CONTROLLERS, OIL ABSORBERS, MASKS, MOISTURIZERS, MUDS, SCRUBS, SOAPS, BARS AND GELS; LIQUID, CREAM AND POWDER FOUNDATIONS; AND MAKEUP REMOVERS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 2–16–2000; IN COMMERCE 2–16–2000.

SN 75–645,284, FILED 2–22–1999.

JENNIFER DIXON, EXAMINING ATTORNEY

Int. Cl.: 4

Prior U.S. Cls.: 1, 6 and 15

Reg. No. 2,816,366

## United States Patent and Trademark Office

Registered Feb. 24, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## VELOCITY

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P. O. BOX 799045
DALLAS, TX 753799045

OWNER OF U.S. REG. NOS. 2,518,569 AND 2,663,964.

FOR: CANDLES, IN CLASS 4 (U.S. CLS. 1, 6 AND 15).

SER. NO. 76-457,124, FILED 10-9-2002.

FIRST USE 8-0-2002; IN COMMERCE 8-0-2002.

YONG KIM, EXAMINING ATTORNEY

Int. Cls.: 9, 14, 18 and 25

Prior U.S. Cls.: 1, 2, 3, 21, 22, 23, 26, 27, 28, 36, 38, 39, 41 and 50

Reg. No. 2,859,305

## United States Patent and Trademark Office

Registered July 6, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## VELOCITY

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P. O. BOX 799045
DALLAS, TX 753799045

FOR: SUNGLASSES SOLD OR GIVEN TO MEM-BERS OF AN INDEPENDENT SALES FORCE IN RECOGNITION OF ACHIEVEMENT OR IN CON-JUNCTION WITH THE PROMOTION OF CERTAIN FRAGRANCE, SKIN CARE, AND COLOR COSMET-ICS PRODUCTS, AS INCENTIVE OR COMMEM-ORATIVE ITEMS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 7-0-2001; IN COMMERCE 7-0-2001.

FOR: JEWELRY, NAMELY WATCHES SOLD OR GIVEN TO MEMBERS OF AN INDEPENDENT SALES FORCE IN RECOGNITION OF ACHIEVE-MENT OR IN CONJUNCTION WITH THE PROMO-TION OF CERTAIN FRAGRANCE, SKIN CARE, AND COLOR COSMETICS PRODUCTS, AS INCEN-TIVE OR COMMEMORATIVE ITEMS , IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 7-0-2001; IN COMMERCE 7-0-2001.

FOR: TOTE BAGS SOLD OR GIVEN TO MEM-BERS OF AN INDEPENDENT SALES FORCE IN RECOGNITION OF ACHIEVEMENT OR IN CON-JUNCTION WITH THE PROMOTION OF CERTAIN FRAGRANCE, SKIN CARE, AND COLOR COSMET-ICS PRODUCTS, AS INCENTIVE OR COMMEM-ORATIVE ITEMS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 7-0-2001; IN COMMERCE 7-0-2001.

FOR: CLOTHING; NAMELY BALL CAPS, AND TEE-SHIRTS SOLD OR GIVEN TO MEMBERS OF AN INDEPENDENT SALES FORCE IN RECOGNI-TION OF ACHIEVEMENT OR IN CONJUNCTION WITH THE PROMOTION OF CERTAIN FRA-GRANCE, SKIN CARE, AND COLOR COSMETICS PRODUCTS, AS INCENTIVE OR COMMEMORA-TIVE ITEMS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 7-0-2001; IN COMMERCE 7-0-2001.

SER. NO. 76-308,226, FILED 8-31-2001.

JEFFREY S. MOLINOFF, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51, and 52

## United States Patent and Trademark Office

Reg. No. 2,663,964
Registered Dec. 17, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## VELOCITY

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P.O. BOX 799045
DALLAS, TX 753799045

FOR: PERFUMES; COLOGNES; RELATED FRA-GRANCE PRODUCTS, NAMELY, BATH AND SHOWER GELS, BODY SOAPS, ESSENTIAL OILS FOR PERSONAL USE, BATH OILS AND BODY OILS; BATH SALTS; BUBBLE BATH; BODY LO-TIONS, CREAMS, GELS AND POWDERS; BODY SPRAYS AND MISTS, AND FRAGRANCED WASH FOR FINE LINGERIE; SKIN CARE PRODUCTS, NAMELY, CLEANSING CREAMS AND LOTIONS, FRESHENERS, TONERS, MOISTURIZERS, NIGHT CREAMS, CLEANSING BARS AND FACIAL SOAPS, HAND CREAMS, BODY CREAMS, FACE CREAMS, SKIN CONDITIONERS, FACIAL OIL CONTROL-LERS, SKIN OIL ABSORBERS, MASKS, COSMETIC FACIAL MUDS, BUFFING CREAMS, FACIAL AND BODY SCRUBS; SKIN EXFOLIATORS, SKIN EMOL-LIENTS, LIQUID TALCS, AND BODY POLISHERS; NON-MEDICATED SUNSCREEN AND SUNBLOCK PREPARATIONS; AND COSMETICS, NAMELY SELF TANNING LOTIONS, CREAMS, GELS, AND SPRAYS, LIQUID MAKEUP FOUNDATIONS, CREAM MAKEUP FOUNDATIONS, FACIAL HIGH-LIGHTERS, BLEMISH CONCEALERS, MASCARAS, EYELINERS, EYE PENCILS, EYE SHADOWS, EYE-BROW PENCILS, EYE MAKEUP REMOVERS, BLUSHERS, ROUGES, POWDER AND CREAM CHEEK COLORS, LOOSE AND PRESSED FACE POWDERS, LIPSTICKS, LIP GLOSSES, LIP LINER PENCILS, LIP COLOR CRAYONS, LIPSTICK AD-JUSTERS, NAMELY, PREPARATIONS USED TO ADJUST THE SHADE OF LIP COLOUR, NAIL CARE PREPARATIONS, NAIL COLORS, NAIL TOP AND BASE COATS; ALL SOLD EXCLUSIVELY BY MEM-BERS OF AN INDEPENDENT CONTRACTOR SALES FORCE WHO SELL PRODUCTS ONLY DI-RECTLY TO THE CONSUMERS ALL SOLD EXCLU-SIVELY BY MEMBERS OF AN INDEPENDENT CONTRACTOR SALES FORCE WHO SELL PRO-DUCTS ONLY DIRECTLY TO THE CONSUMERS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 6-0-2001; IN COMMERCE 6-0-2001.

SN 76-047,294, FILED 5-12-2000.

JEFFREY S. MOLINOFF, EXAMINING ATTORNEY

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51, and 52

**United States Patent and Trademark Office**

Reg. No. 2,518,569

Registered Dec. 11, 2001

## TRADEMARK
### PRINCIPAL REGISTER

## VELOCITY

MARY KAY INC. (DELAWARE CORPORATION)
16251 DALLAS PARKWAY
P.O. BOX 799045
DALLAS, TX 753799045

FOR: PERFUMES, COLOGNES, AND RELATED FRAGRANCE PRODUCT, NAMELY, BATH GELS, BODY SOAPS, AND ESSENTIAL OILS FOR PERSONAL USE; BATH OILS AND BODY OILS; BODY LOTIONS, CREAMS AND POWERS, AND SKIN CARE PRODUCTS, NAMELY, CLEANSING CREAMS AND LOTIONS, FRESHENERS, TONERS, MOISTURIZERS, NIGHT CREAMS, CLEANSING BARS AND FACIAL SOAPS, HAND CREAMS, BODY CREAMS, FACE CREAMS, SKIN CONDITIONERS, OIL CONTROLLERS, OIL ABSORBERS, MASKS, MUDS, BUFFING CREAMS, FACIAL AND BODY SCRUBS; SKIN EXFOLIATORS, SKIN EMOLLIENTS, LIQUID TALCS, AND BODY POLISHERS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 6-0-2001; IN COMMERCE 6-0-2001.

SN 75-922,758, FILED 2-18-2000.

KIMBERLY PERRY, EXAMINING ATTORNEY

# CIVIL COVER SHEET

3 - 0 9 C V 1 2 7 8 - M

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE RESERVE OF THE FORM.)

## I. (a) PLAINTIFFS

Mary Kay, Inc.

## DEFENDANTS

Yahoo! Inc.

**(b)** County of Residence of First Listed Plaintiff    Dallas County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Santa Clara County, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Veronica S. Lewis and Allen W. Yee, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, TX 75201, 214-220-

Attorneys (If Known)

RECEIVED BY
JUL - 6 20
U.S. DISTRICT COURT
CLERK NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 8 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW(405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities – Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 15 U.S.C. § 1051

Brief description of cause:    Violation of federal and state trademark laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ In excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____